United States District Court
Southern District of Texas

**ENTERED**

June 03, 2016

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BRYAN KEITH TAYLOR, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-15-718 |
| | § | |
| CAROLYN W. COLVIN, | § | |
| ACTING COMMISSIONER OF THE | § | |
| SOCIAL SECURITY ADMINISTRATION, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before the court[1] are Plaintiff's Motion for Summary Judgment (Doc. 21) and Defendant's Cross Motion for Summary Judgment (Doc. 11). The court has considered the motions, the responses, the administrative record, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that Plaintiff's motion be **DENIED** and Defendant's motion be **GRANTED**.

### I. Case Background

Plaintiff filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration ("Commissioner" or "Defendant") regarding Plaintiff's claim for disability benefits under Title II of the Social Security Act ("the Act").

---

[1] This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. Doc. 8.

## A.  <u>Procedural History</u>

Plaintiff applied for disability benefits on May 15, 2008, stating that he had been unable to work since July 13, 2007.[2] Plaintiff was thirty-eight years old at the time of his application.[3]  Plaintiff reported that he became unable to work due to depression and post-traumatic stress disorder ("PTSD").[4]  After his application was denied initially and on reconsideration, Plaintiff requested and received a hearing before an Administrative Law Judge ("ALJ").[5]  Plaintiff attended the ALJ hearing on August 7, 2009, and on December 18, 2009, an ALJ who had not presided over the hearing issued a decision finding that Plaintiff was not disabled.[6]

Plaintiff appealed the ALJ's decision to the Appeals Council and then to this court.[7]  On October 16, 2012, the court remanded Plaintiff's case to the Commissioner.[8]  The court found that the ALJ's decision was not supported by substantial evidence on two

---

[2]     Tr. of the Admin. Proceedings ("Tr.") 506-24; also available at <u>Taylor v. Astrue</u>, No. H-11-3762, 2012 WL 4955491 (S.D. Tex. Oct. 16, 2012).

[3]     <u>See</u> Tr. 147.

[4]     <u>See</u> Tr. 151.

[5]     <u>See</u> Tr. 508.

[6]     <u>See</u> <u>id.</u>

[7]     <u>See</u> <u>id.</u>

[8]     <u>See</u> Tr. 524.

grounds.[9]  First, the ALJ failed to consider whether Plaintiff's hand impairment was severe.[10]  Second, the court found that the Residual Functional Capacity ("RFC") finding was not supported by substantial evidence to the extent that it did not incorporate the impairments listed by treating physicians, and ordered the Commissioner to reconsider Plaintiff's ability to perform work in light of these errors.[11]

Following this court's remand, the Appeals Council vacated the decision and remanded the case for further proceedings consistent with the court's order.[12]  A second ALJ hearing was held on April 10, 2013.[13]

**B.  ALJ Hearing**

Plaintiff, his wife, and a vocational examiner ("VE") were present at the hearing.[14]  Plaintiff was represented by an attorney.[15]

Plaintiff testified that he had last worked at the post office as a mail handler in July 2007, when he retired due to a medical

---

[9]   See Tr. 521-23.

[10]   See Tr. 521.

[11]   See Tr. 522-23.

[12]   See Tr. 526, 528.

[13]   See Tr. 419.

[14]   See id.

[15]   See Tr. 421.

disability.[16]  He stated that he unloaded mail trucks and loaded the
mail into containers, and then transported the containers to a mail
sorter.[17]  Plaintiff testified that he was able to unload up to
twenty pounds by himself, but would ask for help if the weight was
beyond twenty pounds to avoid potential back injury and because he
experienced strength loss in his right hand.[18]  He stated that he
could lift things with his right hand, but "not a lot," and that he
could only  hold or turn objects with difficulty.[19]

Plaintiff testified that he suffered from PTSD dating back to
an incident during his service in the Gulf War when he witnessed a
friend being killed by a military truck.[20]  Plaintiff reported that
he began receiving treatment for PTSD and depression through the
Veteran's Administration ("VA") Hospital in the 1990's.[21]

Plaintiff reported that he had difficulty with a supervisor
and that as a result, the post office referred him to a
psychiatrist, who wrote a letter to his employer supporting a
temporary leave of absence and indicating that Plaintiff was being
treated for depression.[22]  Plaintiff testified that he left work

---

[16]    See Tr. 422-23.

[17]    See Tr. 423

[18]    See Tr. 426.

[19]    See Tr. 427.

[20]    See Tr. 430.

[21]    See Tr. 433.

[22]    See Tr. 435.

after a neuropsychologist recommended a leave of absence.[23]
Plaintiff stated that subsequent to that recommendation, he was
told by his union president that he would not be allowed to return
to work.[24] Plaintiff testified that he was granted total disability
by the VA on December 1, 2007.[25]

Plaintiff outlined his daily activities.  He reported that
after taking medication, he would nap in the morning, and that he
slept on average only three to four hours during the night.[26]
Plaintiff stated that after his wife left for the day, he was
normally by himself, although occasionally he would visit his
mother-in-law.[27] However, Plaintiff testified that he did not drive
on his own after taking medication.[28]

Plaintiff reported that after his employment had ended, his
medication had increased, but denied that his condition had
improved.[29] Plaintiff testified that although the VA had originally
suggested that Plaintiff would be able to work in a position where
he did not interact with other people and considered sending
Plaintiff to air conditioning repair school, it later told him he

---

[23]    See Tr. 437.

[24]    See Tr. 438.

[25]    See Tr. 439.

[26]    See Tr. 440.

[27]    See Tr. 441.

[28]    See Tr. 442.

[29]    See Tr. 447.

did not need to work.[30]

Plaintiff's wife testified regarding Plaintiff's impairments.[31] Plaintiff's wife testified that Plaintiff did not handle change well, and that he struggled to manage finances.[32] She reported that the family had filed bankruptcy in 2007 despite receiving insurance money and government assistance following Hurricane Katrina, because Plaintiff had given the assistance payment and his former home in New Orleans to his parents.[33] She testified that Plaintiff's medication made him sleep during the day.[34] She reported that he often felt that others were spying on him.[35] Plaintiff's wife opined that he could not live on his own because he would not be able to make decisions or manage money independently without clear instructions.[36]

The VE testified regarding Plaintiff's work history.[37] The VE categorized Plaintiff's work as a mail handler as light exertion and semi-skilled.[38] The ALJ asked the VE whether a hypothetical

---

[30]    See Tr. 445-46.

[31]    See Tr. 449.

[32]    See Tr. 451.

[33]    See Tr. 452-53.

[34]    See Tr. 458.

[35]    See Tr. 459.

[36]    See Tr. 460-61.

[37]    See Tr. 461.

[38]    See id.

individual having limited light exertion, but with additional limitations of not writing or taking notes, working with objects instead of people, working apart from the public, and with moderate difficulty dealing with supervisors would be able to perform Plaintiff's previous work.[39]  The VE testified that the individual could not perform Plaintiff's past relevant work.[40]  However, the VE opined that the individual could work as a housekeeping cleaner, cafeteria attendant or busser, or equipment cleaner.[41]  The VE further opined that if the individual was limited to hand and arm gross manipulation to one-third of a work-day, needed to be prompted two-to-three times per hour to complete tasks, could not respond to changes in work setting, or could not maintain attention or concentration for two-to-three hours per day, the individual could not sustain employment.[42]

## C.  <u>Commissioner's Decision</u>

On June 11, 2013, the ALJ issued an unfavorable decision.[43] The ALJ found that Plaintiff had not engaged in substantial gainful activity during the relevant period and that he had multiple severe impairments: (1) gout; (2) diabetes melltius; (3) hearing loss; (4)

---

[39]     <u>See</u> Tr. 461-62.

[40]     <u>See</u> Tr. 462.

[41]     <u>See</u> Tr. 463.

[42]     <u>See</u> Tr. 464-65.

[43]     <u>See</u> Tr. 397-413.

hypertension; (5) chronic headaches; (6) major depression; and (7) PTSD.[44]   The ALJ next determined that Plaintiff's severe impairments, individually or collectively, did not meet or medically equal any of the listings of the regulations (the "Listings").[45]

In particular, the ALJ first considered whether Plaintiff met or equaled Listing 12.04 due to his depression and PTSD.[46]   The ALJ determined that Plaintiff had mild restrictions in activities of daily living, moderate difficulties in social functioning, and mild difficulties with concentration, persistence and pace, with no episodes of decompensation of an extended duration.[47]   The ALJ reached this conclusion based on psychotherapy sessions, mental status examinations, and Plaintiff's testimony.[48]   The ALJ similarly found that Plaintiff met none of the criteria of Paragraph C of Listing 12.04.[49]

In determining Plaintiff's RFC to perform work-related activities, the ALJ found Plaintiff capable of light work with the following limitations: limited note taking, working with objects

---

[44]   See Tr. 402.

[45]   See id.   The Listings are found at 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926.

[46]   See Tr. 403.

[47]   See id.

[48]   See id.

[49]   See Tr. 404.

more than people, and no contact with the public.[50]

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause Plaintiff's symptoms, but that Plaintiff's testimony regarding the intensity, persistence, and limiting effects of his symptoms was not entirely credible.[51]   The ALJ first noted that Plaintiff had no physical dysfunction that would preclude work at the medium exertional level.[52]

Plaintiff was given a psychological assessment that found that his global assessment of functioning score ("GAF") was sixty.[53]   The ALJ noted that Plaintiff reported that, prior to his onset date, medications had helped his sleep schedule and his mood was improving.[54]   The ALJ observed that Plaintiff had taken the Wisconsin Card-Sorting test, which showed impairment in Plaintiff's right hand but no mental dysfunction.[55]   The ALJ made his determination regarding Plaintiff's mental impairment based on Plaintiff's treating physician's finding that Plaintiff experienced moderate restrictions in responding to changes in routine settings,

---

[50]   See id.

[51]   See Tr. 405.

[52]   See id.

[53]   See Tr. 406.

[54]   See id.

[55]   See id.

moderate restrictions interacting with the public, supervisors, and co-workers, and mild restrictions making judgments and understanding complex instructions.[56]

The ALJ reported that the VA issued a rating of one-hundred percent disabled on November 7, 2007, entitling him to monthly benefits.[57]  However, the ALJ noted that a determination made by another agency is not binding on the Commissioner because it does not rely on the same standard.[58]  The ALJ additionally observed that Plaintiff had no incentive to return to work after he was found fully disabled by the VA.[59]

Relying on the VE's testimony, the ALJ found that Plaintiff could not perform any past relevant work.[60]  However, the ALJ found that Plaintiff could perform other jobs in the regional and national economy, including housekeeping cleaner, cafeteria attendant, and equipment cleaner.[61]  Accordingly, the ALJ found that Plaintiff had not been under a disability from July 13, 2007, through the date of his decision.[62]

Plaintiff appealed the ALJ's decision, and the Appeals Council

---

[56]   See Tr. 410.

[57]   See Tr. 409

[58]   See id.

[59]   See Tr. 408.

[60]   See Tr. 411.

[61]   See Tr. 412.

[62]   See Tr. 413.

denied Plaintiff's request for review, thereby transforming the ALJ's decision into the final decision of the Commissioner.[63] Plaintiff then timely sought judicial review of the decision by this court.

## II.  Standard of Review and Applicable Law

The court's review of a final decision by the Commissioner denying disability benefits is limited to the determination of whether: (1) the ALJ applied proper legal standards in evaluating the record; and (2) substantial evidence in the record supports the decision.  Waters v. Barnhart, 276 F.3d 716, 718 (5th Cir. 2002).

## A.  Legal Standard

In order to obtain disability benefits, a claimant bears the ultimate burden of proving he is disabled within the meaning of the Act.  Wren v. Sullivan, 925 F.2d 123, 125 (5th Cir. 1991).  Under the applicable legal standard, a claimant is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A); see also Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994).  The existence of such a disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic" findings. 42 U.S.C. § 423(d)(3); see also 42 U.S.C. § 423(d)(5)(A) Jones v.

---

[63]    See Tr. 391-93, 481.

11

Heckler, 702 F.2d 616, 620 (5th Cir. 1983).

To determine whether a claimant is capable of performing any "substantial gainful activity," the regulations provide that disability claims should be evaluated according to the following sequential five-step process:

> (1) a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are; (2) a claimant will not be found to be disabled unless he has a "severe impairment;" (3) a claimant whose impairment meets or is equivalent to [a Listing] will be considered disabled without the need to consider vocational factors; (4) a claimant who is capable of performing work that he has done in the past must be found "not disabled;" and (5) if the claimant is unable to perform her previous work as a result of his impairment, then factors such as his age, education, past work experience, and [RFC] must be considered to determine whether he can do other work.

Bowling v. Shalala, 36 F.3d 431, 435 (5th Cir. 1994); see also 20 C.F.R. § 404.1520.  The analysis stops at any point in the process upon a finding that the claimant is disabled or not disabled. Greenspan, 38 F.3d at 236.

**B.   Substantial Evidence**

The widely accepted definition of "substantial evidence" is "that quantum of relevant evidence that a reasonable mind might accept as adequate to support a conclusion." Carey v. Apfel, 230 F.3d 131, 135 (5th Cir. 2000).  It is "something more than a scintilla but less than a preponderance." Id.  The Commissioner has the responsibility of deciding any conflict in the evidence. Id.  If the findings of fact contained in the Commissioner's

decision are supported by substantial record evidence, they are conclusive, and this court must affirm.   42 U.S.C. § 405(g); Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990).

Only if no credible evidentiary choices of medical findings exist to support the Commissioner's decision should the court overturn it.   Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).   In applying this standard, the court is to review the entire record, but the court may not reweigh the evidence, decide the issues de novo, or substitute the court's judgment for the Commissioner's judgment.   Brown v. Apfel, 192 F.3d 492, 496 (5th Cir. 1999).   In other words, the court is to defer to the decision of the Commissioner as much as is possible without making its review meaningless.   Id.

A failure to controvert facts by competent summary judgment evidence may lead the court to accept them as undisputed.   See Fed. R. Civ. P. 56(e).   Summary judgment is not awarded by default because a motion is undisputed.   See Ford-Evans v. Smith, 206 F. App'x 332, 334 (5th Cir. 2006); Hetzel v. Bethlehem Steel Corp., 50 F.3d 360, 362 n. 3 (5th Cir. 1995); John v. State of Louisiana (Board of Trs. for State Colls. and Univs.), 757 F.2d 698, 708 (5th Cir. 1985).   Summary judgment is appropriate only if the moving parties demonstrate the absence of a genuine issue of material fact and show that judgment is warranted as a matter of law.   See Adams v. Travelers Indem. Co. of Conn., 465 F.3d 156, 164 (5th Cir. 2006);

13

Hetzel, 50 F.3d at 362 n. 3.

### III. Analysis

Plaintiff requests judicial review of the ALJ's decision to deny disability benefits.  Plaintiff asserts that the ALJ erred by failing to follow the court's remand order regarding the severity of Plaintiff's hand injury, by finding an RFC not supported by substantial evidence, and by improperly finding that Plaintiff was capable of working at jobs that exist in the national and regional economy.  Defendant responds that the decision complies with the district court's order and is supported by substantial evidence. The court considers each argument in turn.

### A. **Plaintiff's Hand Impairment**

Plaintiff first argues that the ALJ must be reversed because he failed to follow the court's remand order of October 16, 2012 as it related to Plaintiff's hand injury.

The court's 2012 order found that Plaintiff had "made a minimal showing" that his right hand "should have been considered by the ALJ as a severe impairment."[64]  Plaintiff contends that the ALJ was obligated by this language to determine that his hand injury is a severe impairment and committed reversible error by failing to do so.

The Commissioner is correct that the court did not specifically order that Plaintiff's hand impairment be rated

---

[64]    See Tr. 521.

14

severe.  The court may not make medical determinations de novo, it may only find that an ALJ's decision is not supported by substantial evidence.  <u>See</u> <u>Brown</u>, 192 F.3d at 496.  The court's 2012 order states that the ALJ erred by failing to consider Plaintiff's hand impairment; it was not a mandate requiring the ALJ to make a specific medical determination.

However, Plaintiff is correct that the ALJ did not specifically conduct an analysis to determine whether Plaintiff's hand injury was a severe impairment under the standard established in <u>Stone v. Heckler</u>, 752 F.2d 1099 (5th Cir. 1985).  Under <u>Stone</u>, an impairment is severe unless it has "such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience."  <u>Id.</u> at 1101.  Here, Plaintiff testified that he struggled to grip and move objects with his right hand, and the ALJ noted that Plaintiff's performance in the Wisconsin Card-Sorting test was impaired by decreased dexterity in Plaintiff's right hand. Thus, although the ALJ was not bound to find a severe impairment by the previous order, had the ALJ conducted a proper analysis under <u>Stone</u>, he could have found more than a minimal impairment, and therefore could have classified Plaintiff's hand impairment as "severe."  Because he failed to do so, such failure constituted error by the ALJ.

However, the ALJ's error at step two is not reversible error

15

in of itself.  See Taylor v. Astrue, 706 F.3d 600, 603 (5th Cir. 2012).  The court will hold that an ALJ's error was harmless when it does not "affect the substantial rights of a party" or when it is "inconceivable" that the ALJ would have reached a different conclusion absent the error.  Id.; Frank v. Barnhard, 326 F.3d 618, 622 (5th Cir. 2003).  Here, the ALJ progressed beyond step two as he found at least one severe impairment, and specifically did consider Plaintiff's right hand limitation while determining Plaintiff's RFC.  See 20 C.F.R. § 404.1523 (stating that the Commissioner must find at least one severe impairment to continue in her analysis).  Thus, while the ALJ's failure to find Plaintiff's impairment severe was error, it was harmless because it was incorporated into Plaintiff's RFC. See Reliford v. Colvin, No. H-12-1850, 2013 WL 1787650 *13 (S.D. Tex. 2013)(holding that "even if the ALJ's failure to make a specific severity finding . . . was an error, it was harmless because he considered related limitations at subsequent steps of the disability analysis").

**B.** **Plaintiff's RFC**

Plaintiff next argues that the RFC assigned by the ALJ was not supported by substantial evidence.  Plaintiff contends that the ALJ should have incorporated all of Plaintiff's impairments into his RFC, specifically his social limitations and hearing loss.

Plaintiff argues that the ALJ's RFC evaluation fails to include additional limitations regarding his mental limitations.

16

Specifically, Plaintiff asserts that the ALJ erred by failing to include specific language in the RFC regarding Plaintiff's inability to interact with co-workers and supervisors. Plaintiff argues that the ALJ does not contest a doctor's finding that Plaintiff suffered "moderate" restrictions in his ability to interact with the public, supervisors, and co-workers, and therefore should have specifically incorporated such a limitation in the RFC.

Here, the ALJ found Plaintiff's depression and PTSD to be severe impairments, and specifically credited his doctor's findings. The ALJ accordingly found that Plaintiff was limited to unskilled work that did not require working with the public. In Herring v. Astrue, 788 F. Supp. 2d 513, 519 (N.D. Tex. 2011), the district court found that an ALJ need not specifically include mental limitations into a plaintiff's RFC when there was not evidence that such moderate limitations would affect the plaintiff's ability to work. Id. Here, the ALJ considered Plaintiff's depression, found that Plaintiff experienced moderate restriction in social functioning, and included an additional limitation in Plaintiff's RFC regarding his interaction with the public. The court finds that the ALJ committed no error in making this determination.

Plaintiff also argues that the ALJ erred by failing to include any limitation related to Plaintiff's mild to moderate hearing

loss.  The ALJ noted that Plaintiff's hearing loss was a severe impairment, but did not consider it in the context of Listing 2.10 or include any restriction related to hearing loss in the RFC.

The ALJ noted that Plaintiff was diagnosed with tinnitus with mild to moderate hearing loss after a July 7, 2010 examination.[65] Plaintiff is correct that after the ALJ identified hearing loss as a severe impairment, he should have proceeded to evaluate whether hearing loss met or medically equaled a listing.

However, the ALJ's error is harmless if it did not affect Plaintiff's substantive rights.  See Taylor, 706 F.3d at 603.  The examination found that Plaintiff had an average hearing threshold of twenty-five decibels in his right ear and twenty-three in his left, with a word-recognition score of ninety-eight percent in his right ear and ninety-six percent in his left.[66]  Listing 2.10 governs hearing loss not treated with an implant, and requires an average hearing threshold of sixty decibels or greater or a word-recognition score of forty percent or less in the better ear.  See 20 C.F.R. Pt. 404, Subpt. P., App'x 1, § 2.10.  Plaintiff's mild hearing loss did not approach the required level necessary to meet or medically equal Listing 2.10.  Because the ALJ could not have reached another conclusion, his failure to consider the impairment was harmless error.  See Taylor, 706 F.3d at 603.

---

[65]    See Tr. 405; 681-83.

[66]    See Tr. 682.

Plaintiff additionally alleges that the ALJ erred by failing to include any restrictions in the RFC related to Plaintiff's hearing loss.  He argues that such omission was reversible error.

Plaintiff appears to argue that an ALJ is required to include every impairment as a limitation for the purpose of determining a plaintiff's RFC.  This is not the ALJ's duty.  See Bordelon v. Astrue, 281 F. App'x 418, 422 (5th Cir. 2008) (holding that the plaintiff failed to distinguish between her impairments and the limitations those impairments had on her inability to work). Plaintiff retains the ultimate burden of establishing disability. See Wren, 925 F.2d at 125.  Here, Plaintiff offered no evidence at the hearing or in the record that his mild-to-moderate hearing loss caused a functional limitation on his ability to work.  The ALJ accordingly found no restriction related to hearing in the RFC. The ALJ's determination of the RFC is supported by substantial evidence.

## C.  Hypothetical Question

Plaintiff additionally argues that the ALJ erred because it failed to include all of Plaintiff's limitations, and that the VE's finding that jobs existed that Plaintiff could perform was not supported by substantial evidence.  Plaintiff also contends that Plaintiff's hypothetical question to the VE was incomplete because it did not include Plaintiff's social limitations and gross manipulation in his right hand, and that all jobs cited by the VE

involved either "frequent" or "significant" handling.

The ALJ has a duty to fully and fairly develop the record. Newton v. Apfel, 209 F.3d 448, 455 (5th Cir. 2000). If an ALJ relies on a VE's testimony based on a defective hypothetical question, the ALJ does not meet his burden to show that a plaintiff could perform available work. Boyd v. Apfel, 239 F.3d 698, 708 (5th Cir. 2001). However, the ALJ has the authority to determine what restrictions are supported by the medical record and to incorporate them into his hypothetical question. See Bordelon, 281 F. App'x at 422; Gardner v. Massanari, 264 F.3d 1140, 2001 WL 822457, at *2 (5th Cir. 2001) (unpublished).

Here, the ALJ presented a hypothetical question to the VE based on the limitations he found supported by substantial evidence. Plaintiff contends only that the ALJ should have recognized the additional limitations provided by Plaintiff's attorney at the hearing. Because the ALJ reasonably incorporated all the limitations he found supported by the record evidence into his hypothetical question, the question was not defective. The ALJ therefore properly relied on the VE's determination that jobs existed that Plaintiff was capable of performing.

Finding no legal error in the ALJ's decision and finding that substantial record evidence supports his conclusion that Plaintiff is not disabled, the court **RECOMMENDS** that Defendant's motion for summary judgment be **GRANTED**.

20

### IV.   Conclusion

Based on the foregoing, the court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment be **DENIED** and Defendant's Cross-Motion for Summary Judgment be **GRANTED**.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13.  Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically.   Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 3rd day of June, 2016.

_____
U.S. MAGISTRATE JUDGE

21